UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BRANDON JOHN DEWITT,

                    Petitioner,

v.                                    Case No. 3:03-cv-818-J-20MMH

JAMES V. CROSBY, JR.,
et al.,

                    Respondents.

_____

## ORDER

### I. Status

Petitioner Brandon John Dewitt, an inmate of the Florida penal system proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) pursuant to 28 U.S.C. § 2254 on September 16, 2003.  On May 19, 2005, Petitioner's Amended Petition (Doc. #18) was stricken.  See Court's Order (Doc. #22).  Pursuant to the Court's Order (Doc. #22), Petitioner filed a Second Amended Petition (Doc. #24) on June 1, 2005.

In the Second Amended Petition (Doc. #24), Petitioner challenges a 2000 state court (Flagler County, Florida) judgment of conviction for armed burglary of a dwelling, dealing in stolen property and robbery with a weapon on the following ineffective

assistance of trial counsel grounds for counsel's: (1) failure to argue for an acquittal or in closing argument that there was no evidence that Petitioner "actually personally, versus vicariously or constructively, possessed, carried or used a firearm" during the burglary; (2) failure to object or argue that an enhanced sentence for armed burglary or armed robbery was illegal since neither charge alleged that a firearm was discharged and neither verdict specifically found he actually possessed a firearm; (3) failure to object to the thirty-five year sentences and the fifteen year sentence being disproportionate to the co-defendant's ten year sentence when the co-defendant was equally or more culpable than Petitioner; (4) failure to secure Petitioner's presence for any depositions or to notify him or to furnish him with copies when Petitioner would have assisted counsel by "illustrating the inconsistencies and conflicting testimony" of the witnesses for impeachment purposes and for closing argument; (5) failure to exclude the co-defendant's testimony as unreliable and untrustworthy or to impeach him; (6) failure to request a special jury instruction that the testimony of the co-defendant should be carefully scrutinized since he received a lesser sentence and dismissed charge; (7) failure to ensure the sidebar conferences were transcribed for appellate purposes; and, (8) acts and omissions, cumulatively resulting in substantial prejudice sufficient to warrant relief, even if there is insufficient

2

prejudice when viewed individually.  Petitioner also filed a Brief (Doc. #25) in support of the Second Amended Petition.

Respondents filed a Response to Petition (Doc. #26) (hereinafter Response).  They submitted exhibits in support of their Response.[1]  Petitioner was instructed on how to properly respond to a motion to dismiss and/or for summary judgment.  See Court's Order to Show Cause and Notice to Petitioner (Doc. #14).  Petitioner has properly responded to Respondents' Response.  This case is now ripe for review.

## II. Procedural History

Petitioner was charged by amended information with committing the following offenses:  armed burglary of a dwelling (count one); criminal mischief (count two); theft and dealing in stolen property (count three); and, armed robbery with a weapon (count four).  Ex. A at 89-90.  At the close of the State's case during the trial, the defense moved for a judgment of acquittal.  Ex. B, Transcript of the Jury Trial (hereinafter Tr.) at 200-28.  The court denied the motion as to the armed burglary and the armed robbery, and the court partially granted the motion as to count three, reducing the charge to dealing in stolen property.  Id. at 228.  The State nol prosed the criminal mischief charge.  Ex. A at 74; Tr. at 227.

---

[1] Respondents submitted exhibits in Case No. 3:04-cv-75-J-25HTS and have requested that this Court use that appendix when reviewing their Response.  Those exhibits, which are now a part of this case file, will be referred to as "Ex."

A jury found Petitioner guilty of armed burglary of a dwelling, dealing in stolen property and armed robbery with a weapon. Ex. A at 58-59, 65; Tr. at 342. The trial court sentenced Petitioner to thirty-five (35) years of incarceration for armed burglary of a dwelling, thirty-five (35) years of incarceration for armed robbery with a weapon and to fifteen (15) years for dealing in stolen property, to run concurrently to each other. Ex. A at 58-59, 65-73; Ex. B at 342; Ex. C at 13; see http://www.dc.state.fl.us/activeinmates (Florida Department of Corrections website).

Petitioner appealed to the Fifth District Court of Appeal, in which his attorney raised the following issues: (1) the trial court erred in denying Petitioner's motion in limine and in denying defense counsel's objections to introducing into evidence Petitioner's alibi statements, and (2) the trial court erred in denying Petitioner's motion for mistrial. Ex. D. The State filed an Answer Brief. Ex. E. On August 28, 2001, the appellate court per curiam affirmed with citation to state cases. The mandate issued on September 14, 2001. Dewitt v. Florida, 793 So.2d 967 (Fla. 5th DCA 2001); Ex. G.

On or about September 5, 2002, Petitioner filed a motion for post conviction relief, raising several grounds: (1) the trial court erred by sentencing Petitioner to a harsher sentence than his co-defendant; (2) the evidence that he possessed a firearm during

the crimes was insufficient; (3) he was not afforded an opportunity to be present at certain depositions; (4) the trial court erred in allowing Petitioner's co-defendant to testify at his trial and not properly instructing the jury as to the weight to be given such testimony; and, (5) a sidebar occurred during the trial, but was not placed on the record; and, (6) trial counsel was ineffective for failing to file a motion to exclude the co-defendant's testimony and for failing to ensure that the sidebar in question was placed on the record. Ex. H. The trial court ordered the State to respond, and the State responded. Ex. I. On April 30, 2003, the trial court denied the Rule 3.850 motion, finding that many of the claims could have and should have been raised on direct appeal. Ex. J.

On August 5, 2003, the appellate court per curiam affirmed. Dewitt v. Florida, 852 So.2d 251 (Fla. 5th DCA 2003); Ex. K. The mandate issued on August 22, 2003. Ex. L.

The Petition for Writ of Habeas Corpus (dated September 11, 2003) and filed in this Court on September 16, 2003, appears to be timely filed. Response at 7-8.

### III. EVIDENTIARY HEARING

This Court has carefully reviewed the record and, for the reasons set forth more fully below, concludes Petitioner is not entitled to an evidentiary hearing. A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges

facts which, if proven, would entitle him to habeas corpus relief. Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)). Here, the pertinent facts of the case are fully developed in the record before the Court. Smith, 170 F.3d at 1054 (stating that a district court does not need to conduct an evidentiary hearing "if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel"). No evidentiary proceedings are required in this Court. High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001). The Court can "adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004). Therefore, for the reasons set forth above, an evidentiary hearing will not be conducted by this Court.

## IV.   STANDARD OF REVIEW

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA). Since this action was filed after the effective date of AEDPA, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA. Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert.

6

denied, 538 U.S. 926 (2003); <u>Fugate v. Head</u>, 261 F.3d 1206, 1215
n.10 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, 535 U.S. 1104 (2002); <u>Wilcox
v. Florida Dep't of Corr.</u>, 158 F.3d 1209, 1210 (11th Cir. 1998),
<u>cert</u>. <u>denied</u>, 531 U.S. 840 (2000).

The Eleventh Circuit has described the standard of review
under AEDPA:

> Title 28 U.S.C. § 2254 governs the
> authority of the federal courts to consider
> applications for writs of habeas corpus
> submitted by state prisoners. Section 2254
> was amended by the Antiterrorism and Effective
> Death Penalty Act of 1996 ("AEDPA"), Pub.L.
> No. 104-132, 110 Stat. 1214 (1996), which was
> effective as of April 24, 1996. AEDPA applies
> to all petitions filed after its effective
> date. . . .
>
> AEPDA "places a new constraint on a
> federal habeas court's power to grant a state
> prisoner's application for a writ of habeas
> corpus with respect to claims adjudicated on
> the merits in state court" by establishing a
> deferential standard for reviewing state court
> judgments in these cases. <u>Williams v. Taylor</u>,
> 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146
> L.Ed.2d 389 (2000). Subsection (d) of § 2254
> provides:
>
> > (d) An application for a writ of
> > habeas corpus on behalf of a person
> > in custody pursuant to the judgment
> > of a State court shall not be
> > granted with respect to any claim
> > that was adjudicated on the merits
> > in State court proceedings unless
> > the adjudication of the claim--
> >
> > (1) resulted in a decision that was
> > contrary to, or involved an
> > unreasonable application of, clearly
> > established Federal law, as

> determined by the Supreme Court of
> the United States; or
>
> (2) resulted in a decision that was
> based on an unreasonable
> determination of the facts in light
> of the evidence presented in the
> State court proceeding.
>
> 28 U.S.C. § 2254(d)(1)-(2).
>
> AEDPA also makes clear that substantial
> deference is to be accorded a state court's
> findings of fact. Section 2254(e)(1) provides
> that "a determination of a factual issue made
> by a State court shall be presumed to be
> correct. The applicant shall have the burden
> of rebutting the presumption of correctness by
> clear and convincing evidence." 28 U.S.C. §
> 2254(e)(1).

Henderson v. Campbell, 353 F.3d 880, 889-891 (11th Cir. 2003)

(footnote omitted), cert. denied, 125 S.Ct. 44 (2004).

Clearly, the new 28 U.S.C. § 2254(d) creates a more

deferential standard for federal court review of state court

adjudications: "[u]nless a state court decision is directly

contrary to Supreme Court case law, we review state court findings

of fact and conclusions of law for reasonableness." Van Poyck v.

Florida Dep't of Corr., 290 F.3d 1318, 1321 (11th Cir. 2002) (per

curiam), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003);

Mitchell v. Esparza, 540 U.S. 978 (2003) (per curiam) (holding that

the Ohio Court of Appeals' decision was not "contrary to" or an

"unreasonable application" of clearly established federal law and

stressing "the limits imposed on federal habeas review by 28 U.S.C.

§ 2254(d)").

The "contrary to" and "unreasonable application" clauses have independent meaning and provide separate bases for federal habeas review:

> "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at 1523 (O'Connor, J., concurring). The "contrary to" clause "suggests that the state court's decision must be substantially different" from the controlling legal precedent. Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), cert. denied, --- U.S. ---, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002) (quoting Williams, 529 U.S. at 405, 120 S.Ct. at 1519). A state court's decision that applies the correct legal rule would not fit within the "contrary to" clause even if the federal court might have reached a different result relying on the same law. See Williams, 529 U.S. at 404-06, 120 S.Ct. at 1519-20 (O'Connor, J., concurring).
>
>             . . . .
>
> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 414, 120 S.Ct. at 1523 (O'Connor, J., concurring). In deciding this issue, the federal court should consider whether the state court's application of the law was objectively unreasonable and should not apply the subjective "all reasonable jurists" standard. Id. at 409-10, 120 S.Ct. at 1521-22. The Supreme Court recently adhered to its pronouncements in Williams, stating that "we stressed in

9

> <u>Williams</u> that an unreasonable application is
> different from an incorrect one." <u>Bell v.
> Cone</u>, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152
> L.Ed.2d 914 (2002). The Court further noted
> that "a federal habeas court may not issue a
> writ under the unreasonable application clause
> 'simply because that court concludes in its
> independent judgment that the relevant state-
> court decision applied clearly established
> federal law erroneously or incorrectly.'" <u>Id</u>.
> (quoting <u>Williams</u>, 529 U.S. at 411, 120 S.Ct.
> at 1522 (O'Connor, J., concurring)).

<u>Wellington v. Moore</u>, 314 F.3d 1256, 1260-61 (11th Cir. 2002).

The Eleventh Circuit has addressed the application of the

"contrary to" clause in reviewing a state court adjudication:

> In applying the "contrary to" prong of
> AEDPA, we have recognized that where no
> Supreme Court precedent is on point, "we
> cannot say that the state court's conclusion
> . . . is contrary to clearly established
> Federal law as determined by the U.S. Supreme
> Court." <u>McIntyre v. Williams</u>, 216 F.3d 1254,
> 1258 (11th Cir. 2000).

<u>Washington v. Crosby</u>, 324 F.3d 1263, 1265 (11th Cir.), <u>cert</u>.

<u>denied</u>, 540 U.S. 965 (2003).

Under 28 U.S.C. § 2254(d)(2), this Court must determine

whether the state court's adjudication resulted in a decision that

was based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceeding. Furthermore,

AEDPA "also directs that a presumption of correctness be afforded

factual findings of state courts, which may be rebutted only by

clear and convincing evidence. <u>See</u> <u>id</u>. at § 2254(e)(1). This

presumption of correctness applies equally to factual

determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

### V. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 125 S.Ct. 2456, 2462 (2005) (citations omitted). If counsel's performance falls "below the line of reasonable practice, there is a further

question about prejudice, that is, whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. at 2467 (citation omitted).

The Eleventh Circuit has captured the essence of an ineffectiveness claim:

> [A] petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Establishing these two elements is not easy: "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).
>
> For assessing a lawyer's performance, Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000) (en banc) cert. denied, 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001), sets out the basic law: "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal marks omitted). . . . Our role in reviewing an ineffective assistance claim is not to "grade" a lawyer's performance; instead, we determine only whether a lawyer's performance was within "the wide range of professionally competent assistance." See Strickland, 104 S.Ct. at 2066.
>
> The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken

12

the action that his lawyer did take." <u>See</u>
<u>Chandler</u>, 218 F.3d at 1315. . . .

A petitioner's burden of establishing
that his lawyer's deficient performance
prejudiced his case is also high. "It is not
enough for the [petitioner] to show that the
errors had some conceivable effect on the
outcome of the proceeding. Virtually every
act or omission of counsel would meet that
test." <u>Strickland</u>, 104 S.Ct. at 2067.
Instead, a petitioner must establish that a
reasonable probability exists that the outcome
of the case would have been different if his
lawyer had given adequate assistance. <u>See id</u>.
at 2068.[2]

<u>Van Poyck</u>, 290 F.3d at 1322-23 (footnotes omitted).

In sum, "[w]ithout proof of both deficient performance and
prejudice to the defense, . . . it could not be said that the
sentence or conviction 'resulted from a breakdown in the adversary
process that rendered the result of the proceeding unreliable,' and
the sentence or conviction should stand." <u>Bell v. Cone</u>, 535 U.S.
685, 695 (2002) (internal citation omitted) (quoting <u>Strickland</u>,
466 U.S. at 687).

---

[2] However, "when a defendant raises the unusual claim that
trial counsel, while efficacious in raising an issue, nonetheless
failed to preserve it for appeal, the appropriate prejudice inquiry
asks whether there is a reasonable likelihood of a more favorable
outcome on appeal had the claim been preserved." <u>Davis v. Sec'y</u>
<u>for the Dep't of Corr.</u>, 341 F.3d 1310, 1316 (11th Cir. 2003) (per
curiam) (citation omitted).

## VI. Findings of Fact and Conclusions of Law

## A. Procedural Default

With respect to the eight ineffectiveness claims that Petitioner has raised in the Second Amended Petition now before this Court, Respondents contend that the claims were not presented in his Rule 3.850 motion; however, they note that two of the allegations made by Petitioner in the Rule 3.850 motion "could be interpreted as coming close to presenting claims of ineffective assistance of counsel . . . ." Id. at 9-10. Respondents conclude, and this Court agrees, that Petitioner did not raise grounds one, two, three, four, six and eight in state court and thus Petitioner has procedurally default these claims.[3]  Id. at 8-12.

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies. See Castille v. Peoples, 489 U.S. 346, 349, reh'g denied, 490 U.S. 1076 (1989); Rose v. Lundy, 455 U.S. 509 (1982).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." Turner v. Crosby, 339 F.3d at 1281 (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)).   "This exhaustion doctrine 'is designed to give the state courts a full

_____

[3] Petitioner filed a Rule 3.850 motion, in which he raised only two ineffectiveness claims.  The trial court, in denying the Rule 3.850 motion, concluded that the other claims could have and should have been raised on direct appeal.  Ex. J.

14

and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts.'" Id. (quoting O'Sullivan, 526 U.S. at 845).

Generally, a federal habeas petition should be dismissed if the petitioner has failed to exhaust state remedies. See Keeney v. Tamayo-Reyes, 504 U.S. 1, 10 (1992). A federal court need not dismiss the petition to allow for exhaustion of state remedies, however, if such a dismissal would be futile.

> [I]f the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal.

Bailey v. Nagle, 172 F.3d 1299, 1303 (11th Cir. 1999) (per curiam) (citing Snowden v. Singletary, 135 F.3d 732, 737 (11th Cir.), cert. denied, 525 U.S. 963 (1998)).

While he raised ineffectiveness claims in his Rule 3.850 motions, he failed to raise grounds one, two, three, four, six and eight. It would be futile for this Court to dismiss this case to give Petitioner the opportunity to present his unexhausted claims to the state courts because second or successive 3.850 motions are subject to dismissal if the court finds that the motion "fails to allege new or different grounds for relief and the prior determination was on the merits" or the court finds that the

15

failure of the movant to assert new and different grounds in a prior motion constitutes an abuse of procedure. Fla. R. Crim. P. 3.850(f). Furthermore, any 3.850 motion that Petitioner filed at this time would be subject to dismissal as untimely. See Fla. R. Crim. P. 3.850(b). Thus, Petitioner's unexhausted claims have been procedurally defaulted. See Bailey, 172 F.3d at 1305.

"Procedural defaults in state courts will foreclose federal court review, absent a showing of cause and prejudice." Parker v. Sec'y for the Dep't of Corr., 331 F.3d 764, 770 (11th Cir. 2003) (citing Wainwright v. Sykes, 433 U.S. 72 (1977)), cert. denied, 540 U.S. 1222 (2004). "[A] petitioner may gain federal review of an otherwise procedurally defaulted claim if he can demonstrate both cause excusing the default and actual prejudice resulting from the bar." Hill v. Jones, 81 F.3d 1015, 1022-23 (11th Cir. 1996) (citations omitted), cert. denied, 519 U.S. 1119 (1997).

"[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice." Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)), cert. denied, 538 U.S. 947 (2003). "In order to show the type of 'miscarriage of justice' that will excuse a procedural bar, a petitioner must make a colorable showing of actual innocence." Crawford v. Head, 311 F.3d 1288, 1327 (11th Cir. 2002) (citations

omitted), <u>cert</u>. <u>denied</u>, 540 U.S. 956 (2003).  The actual innocence exception is "exceedingly narrow in scope" and requires proof of factual innocence, not mere legal insufficiency.  <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), <u>cert</u>. <u>denied</u>, 535 U.S. 926 (2002); <u>Sawyer v. Holder</u>, 326 F.3d 1363, 1367 (11th Cir.), <u>cert</u>. <u>denied</u>, 540 U.S. 900 (2003).  "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson</u>, 256 F.3d at 1171 (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)).  Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Id</u>. (citation omitted) (quoting <u>Schlup</u>, 513 U.S. at 324) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected.").  Here, Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar.  Furthermore, he has not shown that he is entitled to the fundamental miscarriage of justice exception.  For these reasons, the Court need not review the merits of grounds one, two, three, four, six and eight.

## B. Grounds Five and Seven

Petitioner claims ineffectiveness for trial counsel's failure to exclude the co-defendant's testimony as unreliable and untrustworthy or to impeach him (ground five) and for failure to

17

ensure the sidebar conferences were transcribed for appellate
purposes (ground seven).   As conceded by Respondents (Response at
10), these grounds were raised in Petitioner's Rule 3.850 motion,
and the trial court adjudicated the claims on the merits.   The
trial court, in denying the claims, stated, in pertinent part:

### Testimony of Co-Defendant

Defendant has failed to show any
reasonable grounds that would have justified
the exclusion of his Co-Defendant's testimony.
Mr. Johnson admitted on the stand that he had
received a lighter sentence after agreeing to
testify against Defendant.   Defendant's
counsel had ample opportunity to cross examine
Mr. Johnson and question his credibility and
the weight that should be given to his
testimony by the jury.   In addition, the
jurors were properly instructed that they
could determine the credibility of any
particular witness and the weight to be given
to the testimony of any particular witness.
The jury was even instructed that among the
factors they could consider in determining
credibility was whether the witness had
anything to gain from the outcome of the case.
Finally, the failure to exclude Mr. Johnson's
testimony is an issue that could have and
should have been raised on direct appeal.

### The Sidebar

Defendant correctly points out that a
sidebar took place that for some reason was
not transcribed by the court reporter.
However, Defendant has failed to allege any
prejudicial action that supposedly took place
at the sidebar in question, and the transcript
does not show what took place at the sidebar
in question.

## Ineffective Assistance of Counsel

>     Defendant has not established a claim for
> ineffective assistance of counsel against his
> trial counsel.  He has failed to establish
> that he was prejudiced in any way by counsel's
> failure to file a motion to exclude Mr.
> Johnson's testimony or by counsel's failure to
> ensure that all sidebars were transcribed by
> the court reporter.

Ex. J at 2-3.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order.  Accordingly, the claims were rejected on the merits by the state trial and appellate courts.  Thus, there are qualifying state court decisions.  These grounds should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  The Court must next consider the "contrary to" and "unreasonable application" components of the statute.  "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide."  Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002).

Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of these claims because the state courts' adjudications of the claims were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of

the facts in light of the evidence presented in the state court proceedings.

In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence.  Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. <u>United States v. Freixas</u>, 332 F.3d 1314, 1319-20 (11th Cir. 2003) (citations omitted).

Given defense counsel's actions based on the record before this Court, defense counsel's performance was not deficient.  In the opening statement, defense counsel cautioned the jury that "[i]t's important that you view that evidence [Kevin Johnson's testimony] in the context out of which it arises."  Tr. at 20. Specifically, he explained to the jury:

> Kevin Johnson did benefit from entering a plea of guilty.  The evidence will show that he was charged with the same crimes that Brandon is charged with.  It will show that those crimes, at least two of which are first-degree felonies, are punishable by terms of 30 years.
>
> He will tell you that he entered a plea knowing that he was going to get ten years, and ask you to believe that there was no benefit.
>
> .  .  .  .
>
> And when you compare that evidence with all of his other statements, about how the burglary was committed, the evidence will be conflicting in nature, and what he says won't totally make sense.

. . . .

> None of the evidence will implicate
> Brandon in what is a very horrible situation.
> And I ask you to carefully scrutinize the
> context out of which it arises, who is saying
> it, and ask yourself how so many convicted
> felons can be relied on to decide the faith
> [sic] of one young man.

Id. at 21, 23.

Petitioner has not shown any reasonable grounds that would have justified the exclusion of his co-defendant's testimony. Prior to the testimony of co-defendant Kevin Johnson, a sidebar conference (at the request of the prosecutor) was held outside the hearing of the court reporter and the jury. Id. at 32. Mr. Johnson admitted on the stand that he had received a lighter sentence; however, the ten years of incarceration that he received was not based upon his testifying against Petitioner. Id. at 48-49, 58-61, 73-74, 75. Defense counsel conducted an extensive cross-examination of Mr. Johnson and questioned his credibility and the weight that should be given to his testimony by the jury. In closing argument, defense counsel, in reviewing the evidence presented, cautioned the jury to carefully assess Mr. Johnson's testimony:

> Next we heard from Kevin Johnson. Now,
> Mr. Johnson would have you believe that he's
> receiving no benefit for his testimony. He
> did admit that he was charged with the same
> crimes as Brandon, that he understood before
> he entered his plea of guilty that he was
> looking at spending the rest of his prison -
> the rest of his life in prison. And when he

21

entered his plea he knew that he was going to receive only ten years.

I simply ask you to reason amongst yourselves and determine whether or not there was a benefit given to Mr. Johnson for what would ultimately be his testimony on the stand.

The Judge will instruct you on weighing the evidence, numerous factors, some - eight, nine, ten factors to consider, among those that you would have already thought of yourselves. One of those is the benefit that he will gain. There's an obvious benefit there. Big difference between ten years and life.

Id. at 279-80.

Finally, the jurors were properly instructed that they could determine the credibility of any particular witness and the weight to be given to the testimony of any particular witness. Id. at 324-26. The jury was even instructed that among the factors they could consider in determining credibility was whether the witness had anything to gain from the outcome of the case. Id. These ineffectiveness claims are without merit.

## VII. Conclusion

Any other claims not specifically addressed are found to be without merit. Accordingly, for all of the above-stated reasons, the Second Amended Petition will be denied and this case will be dismissed with prejudice.

22

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Second Amended Petition (Doc. #24) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.    The Clerk of the Court shall enter judgment denying the Second Amended Petition and dismissing this case with prejudice.

3.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this _6th_ day of October, 2005.

_____
UNITED STATES DISTRICT JUDGE

sc 10/6
c:
Brandon John Dewitt
Ass't Attorney General (Golden)

23